No. 22-50145

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

———————————

RESTAURANT LAW CENTER; TEXAS RESTAURANT ASSOCIATION,

Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF LABOR; HONORABLE MARTIN J. WALSH, Secretary of the U.S. Department of Labor; JESSICA LOOMAN, Acting Administrator of the Department of Labors Wage and Hour Division, in her official capacity,

Defendants-Appellees.

———————————

On Appeal from the United States District Court for the Western District of Texas

———————————

## BRIEF FOR APPELLEES

———————————

*Of Counsel:*

SEEMA NANDA
*Solicitor of Labor*

JENNIFER S. BRAND
*Associate Solicitor*

MARLA VAN BUREN
*Counsel for Child Labor and Fair Labor Standards Act Special Projects*

ERIN M. MOHAN
JAMES MORLATH
*Senior Attorneys*
*U.S. Department of Labor*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

ASHLEY C. HOFF
*United States Attorney*

ALISA B. KLEIN
JENNIFER L. UTRECHT
*Attorneys, Appellate Staff*
*Civil Division, Room 7710*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-9039*

# CERTIFICATE OF INTERESTED PERSONS

## No. 22-50145

RESTAURANT LAW CENTER; TEXAS RESTAURANT ASSOCIATION,

Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF LABOR; HONORABLE MARTIN J. WALSH, Secretary of the U.S. Department of Labor; JESSICA LOOMAN, Acting Administrator of the Department of Labors Wage and Hour Division, in her official capacity,

Defendants-Appellees.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Plaintiffs-appellants:

 Restaurant Law Center
 Texas Restaurant Association

Defendants-appellees:

 United States Department of Labor
 Martin J. Walsh, Secretary of the United States Department of Labor
 Jessica Looman, Acting Administrator of the Department of Labor's Wage and Hour Division

Counsel:

For plaintiffs-appellants:

 Epstein Becker & Green, P.C.

Paul DeCamp ([pdecamp@egblaw.com](mailto:pdecamp@egblaw.com))
Kathleen Barrett ([kbarrett@ebglaw.com](mailto:kbarrett@ebglaw.com))

Restaurant Law Center
Angelo Amador ([amador@restaurant.org](mailto:amador@restaurant.org))

For defendants-appellees:

United States Department of Justice, Civil Division, Appellate Branch
Jennifer L. Utrecht ([Jennifer.l.utrecht@usdoj.gov](mailto:Jennifer.l.utrecht@usdoj.gov))
Alisa B. Klein ([alisa.klein@usdoj.gov](mailto:alisa.klein@usdoj.gov))

United States Department of Justice, Civil Division, Federal Programs Branch
Johnny H. Walker, III ([johnny.h.walker@usdoj.gov](mailto:johnny.h.walker@usdoj.gov))

## STATEMENT REGARDING ORAL ARGUMENT

The district court denied plaintiffs' motion for a preliminary injunction because the court found, after an evidentiary hearing, that plaintiffs failed to show that the challenged regulation would cause them irreparable harm before a decision on the merits could be issued. That ruling was well within the district court's discretion and should be affirmed. The government stands ready to present oral argument if the Court would find it helpful. We note, however, that cross-motions for summary judgment are fully briefed and that a district court decision on the merits will moot out this interlocutory appeal.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

STATEMENT OF JURISDICTION ...................................................................... 3

STATEMENT OF THE ISSUES .......................................................................... 4

STATEMENT OF THE CASE ............................................................................... 4

I.    The Fair Labor Standards Act's Treatment of Tipped Employees ..................... 4

II.   The Department of Labor's Regulations and Guidance ...................................... 5

      A.    The 1967 Dual Jobs Regulation ................................................................ 5

      B.    The 1988 Guidance Establishing the "80/20 Rule" .................................. 8

      C.    The 2020 Regulation Rescinding the 80/20 Guidance ............................ 9

      D.    The 2021 Regulation Reinstating the 80/20 Guidance ........................... 10

II.   District Court Proceedings ................................................................................ 13

      A.    The Order Denying A Preliminary Injunction ......................................... 13

      B.    Ongoing District Court Proceedings ........................................................ 14

SUMMARY OF ARGUMENT ............................................................................. 15

STANDARD OF REVIEW ................................................................................... 17

ARGUMENT ........................................................................................................ 17

I.    The District Court Correctly Found That Plaintiffs Failed To
      Substantiate Their Assertions Of Irreparable Harm ......................................... 17

II.   Plaintiffs Failed To Show A Likelihood Of Success On The Merits ................ 29

CONCLUSION ..................................................................................................... 40

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Carlson v. Postal Regulatory Comm'n,*
  938 F.3d 337 (D.C. Cir. 2019) ..................................................... 37

*Fast v. Applebee's Int'l, Inc.,*
  638 F.3d 872 (8th Cir. 2011) ..............................................9, 23, 31

*FCC v. Prometheus Radio Project,*
  141 S. Ct. 1150 (2021) ................................................................ 37

*Flood v. Carlson Rests. Inc.,*
  94 F. Supp. 3d 572 (S.D.N.Y. 2015) ............................................ 31

*Home Care Ass'n of Am. v. Weil,*
  799 F.3d 1084 (D.C. Cir. 2015) .................................................. 30

*Huawei Techs. USA, Inc. v. FCC,*
  2 F.4th 421 (5th Cir. 2021) .....................................................36-37

*Long Island Care at Home, Ltd. v. Coke,*
  551 U.S. 158 (2007) .................................................................... 30

*Marsh v. J. Alexander's LLC,*
  905 F.3d 610 (9th Cir. 2018) ..............................9, 23, 31, 32, 35

*Rafferty v. Denny's, Inc.,*
  13 F.4th 1166 (11th Cir. 2021) ...........................9-10, 23, 31, 36

*Roberson v. Texas Roadhouse Mgmt. Corp.,*
  Civ. A. No. 19-0628, 2020 WL 7265860 (W.D. Ky. Dec. 10, 2020)....................10, 31

*Rorie v. WSP2, LLC,*
  485 F. Supp. 3d 1037 (W.D. Ark. 2020).................................... 23

*Superior Oil Co. v. FERC,*
  563 F.2d 191 (5th Cir. 1977) ..................................................... 36

*Texas Oil & Gas Ass'n v. U.S. EPA*,
  161 F.3d 923 (5th Cir. 1998) ............................................................... 35

*Topletz v. Skinner*,
  7 F.4th 284 (5th Cir. 2021) ................................................................. 17

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ........................................................................... 3, 17

## Statutes:

Pub. L. No. 75-718, 52 Stat. 1060 (1938)............................................. 4

Pub. L. No. 89-97, 79 Stat. 286 (1965)................................................ 34

Pub. L. No. 89-601, 80 Stat. 830 (1966)............................ 1, 4-5, 30, 34

Pub. L. No. 93-259, 88 Stat. 55 (1974)............................................... 34

Pub. L. No. 115-141, 132 Stat. 348 (2018).......................................... 34

28 U.S.C. § 1292(a)(1) ......................................................................... 4

28 U.S.C. § 1331 .................................................................................. 3

29 U.S.C. § 203(m)(2)(A) ................................................................ 5, 32

29 U.S.C. § 203(m)(2)(B) .................................................................32, 34

29 U.S.C. § 203(t) ...............................................1, 5, 29, 34, 35

29 U.S.C. § 206(a) ................................................................................ 4

42 U.S.C. § 409(a)(10)(B) ................................................................... 34

## Regulations:

29 C.F.R. § 531.56(e) ...............................................................6, 10, 20

29 C.F.R. § 531.56(e) (2020) ............................................................. 22

29 C.F.R. § 531.56(e) (1967) ............................................................. 30

29 C.F.R. § 531.56(f) ......................................................................... 11

29 C.F.R. § 531.56(f)(1) .................................................................... 20

29 C.F.R. § 531.56(f)(3) .................................................................... 12

29 C.F.R. § 531.56(f)(4) ...............................................................12, 20

29 C.F.R. § 531.56(f)(5) .................................................................... 12

29 C.F.R. § 785.19(a) ........................................................................ 21

**Legislative Materials:**

H.R. Rep. No. 89-1366 (1966) ............................................................ 5

S. Rep. No 89-1487 (1966) .........................................................5, 33, 34

S. Rep. No. 93-690 (1974) ........................................................32, 34, 39

**Other Authorities:**

32 Fed. Reg. 13,575 (Sept. 28, 1967) ...........................................5, 6, 30

85 Fed. Reg. 86,756 (Dec. 30, 2020) ...........................................10, 32

86 Fed. Reg. 11,632 (Feb. 26, 2021) ................................................ 11

86 Fed. Reg. 22,597 (Apr. 29, 2021) ................................................ 11

86 Fed. Reg. 32,818 (June 23, 2021) ................................................ 11

86 Fed. Reg. 60,114 (Oct. 29, 2021) .....................2, 9, 10, 11, 12, 13, 18, 20,
21, 23, 27, 28, 35, 37, 38, 39

Department of Labor Wage and Hour Division,
Field Operations Handbook (2016) .................................................................. 8

## INTRODUCTION

The Fair Labor Standards Act (FLSA) generally requires employers to pay a minimum hourly wage, which is currently $7.25. However, the Act allows employers to pay tipped employees a reduced direct wage of as little as $2.13 per hour and to use a portion of the tips that the employee receives from customers as a credit toward the $7.25 minimum wage. This tip credit is available to employers only when an employee is "engaged in an occupation in which he customarily and regularly receives more than" a specified amount of tips. 29 U.S.C. § 203(t).

Congress did not further define these terms but expressly delegated authority to the Department of Labor to issue necessary rules, orders, and regulations. *See* Pub. L. No. 89-601, § 602, 80 Stat. 830, 844 (1966). Without further guidance, the tip credit could have been abused. Were employers to assign tipped employees to work that is not part of the tipped occupation for a significant period of time—for example, by requiring a server to clean bathrooms—those employees would lack the opportunity to earn tips during that time. And if the employer were to take a tip credit for all hours that such an employee worked, that would effectively allow the employer to appropriate the tips that the employee earned while serving customers to subsidize reduced direct wages for other, non-tipped work.

Accordingly, in 1967—the year after Congress amended the FLSA to include the tip credit—the Department of Labor promulgated a regulation that addressed employees working in "dual jobs," where they performed both non-tipped and tipped

labor. The regulation provided that when an individual is hired to perform two separate jobs, a tipped job and a non-tipped job, the tip credit is available only for the time the employee spends in the tipped occupation. It distinguished this scenario from one in which a tipped worker occasionally performed duties that are related to their tipped work but do not generate tips, and provided that an employer could continue to take a tip credit for this time. Guidance interpreting that regulation clarified that employers could take the tip credit for time that a tipped employee spent on such related, non-tipped duties, so long as the employee did not perform such duties for more than twenty percent of their work week. That guidance—which became colloquially known as the 80/20 Rule—remained in place for most of three decades and was overwhelmingly approved by courts.

In 2018, however, the Department of Labor issued new guidance rescinding the longstanding 80/20 guidance. Although that change was met with near-universal rejection by federal courts, the Department issued a regulation codifying that rescission in 2020. However, the rescission never took effect. In 2021, the Department withdrew the 2020 rule and, after notice-and-comment rulemaking, issued a regulation that largely reinstated the approach to the tip credit taken in the longstanding 80/20 guidance. *See* 86 Fed. Reg. 60,114 (Oct. 29, 2021).

Plaintiffs challenged the 2021 rule and moved for a preliminary injunction. After an evidentiary hearing, the district court denied that motion on the ground that plaintiffs had failed to show that their members would experience irreparable harm

before a decision on the merits could issue. The court acknowledged that employers might have incurred costs to prepare for the 2021 rule's implementation but explained that the rule had already been in effect for over a month and that those costs should already have been incurred; such preparatory costs thus could not provide a basis for a preliminary injunction. The court further found that plaintiffs' declarations and testimony were devoid of specific details regarding costs that either had been incurred or would be incurred by plaintiffs and their members, and instead, consisted only of "speculative concerns, conclusory claims, and uncredible assertions." ROA.638.

Accordingly, the district court denied a preliminary injunction, which may not be issued unless "the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (internal quotations omitted). The parties have since filed cross-motions for summary judgment, which are fully briefed and awaiting decision in the district court. Because the district court did not reach the merits in addressing plaintiffs' motion for a preliminary injunction, even if this Court disagrees with the district court's reasoned conclusion that plaintiffs have not established irreparable harm, this Court should decline plaintiffs' invitation to reach the merits and should remand for the court to adjudicate the remaining preliminary injunction factors.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331. The district court denied plaintiffs' motion for a preliminary injunction on February 22,

2022.  ROA.630-39.  Plaintiffs filed a timely notice of appeal on March 1, 2022.

ROA.640-42.  This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES

1.  Whether the district court erred in finding, after an evidentiary hearing, that
plaintiffs had failed to demonstrate that the 2021 rule was likely to cause them
irreparable harm before a decision on the merits could be rendered.

2.  Whether plaintiffs also failed to establish a likelihood of success on the
merits of their challenge to the 2021 rule, which largely codified guidance that had
been in place for decades.

## STATEMENT OF THE CASE

### I.    The Fair Labor Standards Act's Treatment of Tipped Employees

Congress enacted the Fair Labor Standards Act to eliminate what it found to be
"labor conditions detrimental to the maintenance of the minimum standard of living
necessary for heath, efficiency, and general wellbeing of workers."  Pub. L. No. 75-
718, § 2, 52 Stat. 1060, 1060 (1938).  A central provision of the FLSA requires
employers to pay their employees a minimum wage.  *Id.* § 6(a), 52 Stat. at 1062-63
(codified as amended at 29 U.S.C. § 206(a)).  As originally enacted in 1938, the FLSA
exempted certain industries, including the restaurant industry, from the minimum
wage requirements.  *Id.* § 13, 52 Stat. at 1067.

In 1966, Congress amended the FLSA to extend its protections to additional
employees, including many in the restaurant industry.  Pub. L. No. 89-601, § 201, 80

Stat. at 833.  In so doing, Congress confronted the question whether tips received by certain restaurant workers from a source other than their employers (*i.e.*, from customers) should be counted as wages and credited toward the employers' minimum wage obligations.  *See* S. Rep. No. 89-1487, at 12-13 (1966); H.R. Rep. No. 89-1366, at 19-20 (1966).  Congress addressed that issue by permitting employers to take a partial credit toward the minimum-wage requirement with the tips received by tipped employees.  *See* 29 U.S.C. § 203(m)(2)(A).

The 1966 amendments defined a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than" a specified minimum a month in tips (now $30).  29 U.S.C. § 203(t).  Congress did not further define these terms but expressly delegated authority to the Department of Labor to implement the 1966 amendments through necessary rules, regulations, and orders.  *See* Pub. L. No. 89-601, § 602, 80 Stat. at 844.

## II.     The Department of Labor's Regulations and Guidance

### A.     The 1967 Dual Jobs Regulation

In 1967, the year after Congress authorized the tip credit, the Department of Labor issued a regulation implementing that provision.  32 Fed. Reg. 13,575 (Sept. 28, 1967).  As early as that first rulemaking, the Department sought to address the problem of how to compensate an employee who is "employed in a dual job"—that is, an employee who does work for which they receive tips (such as waiting tables) as well as work for which they do not receive tips (such as janitorial work).  *Id.* at 13,580.

The 1967 regulation indicated that such an employee "is a tipped employee only with respect to his employment as a waiter" and that "no tip credit can be taken for his hours of employment in his occupation of maintenance man." 32 Fed. Reg. at 13,580-81 (codified at 29 C.F.R. § 531.56(e)). The Department distinguished that situation from that where a server "spends *part of her time* cleaning and setting tables, toasting bread, making coffee and *occasionally* washing dishes or glasses," concluding that such "related duties" need not themselves be "directed toward producing tips." *Id.* at 13,581 (emphasis added).

Between 1979 and 1985, the Department of Labor issued three opinion letters interpreting and applying the 1967 dual jobs regulation. First, in 1979, the Department considered whether a restaurant employer could take a tip credit for time that a server spent preparing vegetables for the salad bar. ROA.475. The Department opined that, although servers are generally employees who customarily and regularly receive tips, the employer could not take a tip credit for the specific hours when the server performed "salad preparation activities" because those activities "are essentially the activities performed by chefs," not servers. ROA.475

Second, in 1980, the Department of Labor addressed a situation in which servers performed non-tipped duties such as storing condiments in a cooler, cleaning and resetting tables (including filling salt and pepper shakers), cleaning and stocking a server station, and vacuuming the carpet after the restaurant closed. ROA.476. The Department concluded that "[i]nsofar as the after-hours clean-up [described] are

assigned generally to the waitress/waiter staff, we believe that such duties constitute tipped employment within the meaning of the regulation." ROA.476. The Department noted, however, that it "might have a different opinion if the facts indicated that specific employees were routinely assigned, for example, maintenance-type work such as floor vacuuming." ROA.476.

Finally, in 1985, the Department opined about whether an employer could take a tip credit for various "salad bar and dining room set-up" duties assigned to one of two to four servers on a daily shift. ROA.477-79. Citing its 1979 letter, the Department reiterated that "salad preparation activities are essentially the activities performed by chefs and no tip credit may be taken for the time spent in preparing vegetables for the salad bar." ROA.478. It also reiterated, as indicated by the 1980 letter, that the "tip credit could be taken for non-salad bar preparatory work or after-hours clean-up if such duties are incidental to the wa[i]ter or waitress['] regular duties and are assigned generally to the waiter/waitress staff." ROA.478. Under the facts presented, however, the Department determined that the employer could not take a tip credit for the time spent setting up the dining room because (1) "only one waiter or waitress is assigned to perform all preparatory activities," (2) the "opening waiter or waitress' responsibilities extend to the entire restaurant rather than to the specific area or customers which they serve," and (3) "the activities performed prior to the opening of the restaurant consume a substantial portion of the waiter or waitress' workday." ROA.478-79.

### B.     The 1988 Guidance Establishing the "80/20 Rule"

In 1988, the Department of Labor's Wage and Hour Division (WHD) updated its Field Operations Handbook to incorporate and refine the policy established by the Department's prior opinion letters regarding the 1967 dual jobs regulation. As revised, the Handbook permitted a tip credit for time spent in duties "related to the tipped occupation, even though such duties are not by themselves directed toward producing tips," so long as those related, non-tipped duties are "incidental" and "generally assigned." WHD Field Operations Handbook Rev. 563 § 30d00(e) (Dec. 9, 1988) (ROA.480). Critically, however, the Handbook stated that where "tipped employees spend a substantial amount of time (in excess of 20 percent) performing" such related, non-tipped duties, "no tip credit may be taken for the time spent in such duties." ROA.480.[1] This policy, though not promulgated as a regulation, became known as the "80/20 Rule" and established a substantial but limited tolerance for related, non-tipped work, recognizing that if a tipped employee performs too much non-tipped related work, the employee is no longer engaged in a tipped occupation.

For the next three decades, the 80/20 guidance remained largely unchanged, except for a three-month period between January 16, 2009, and March 2, 2009, in which the Department of Labor issued—and quicky withdrew—an opinion letter that

---

[1] The Handbook also provided that "an employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation." WHD Field Operations Handbook, § 30d00(f)(4) (2016); *see also* WHD Field Operations Handbook, § 30d00(e) (1988) (ROA.480).

briefly rescinded the rule. *See* 86 Fed. Reg. 60,114 at 60,117. The 80/20 guidance was repeatedly upheld in the face of challenges by the restaurant industry. *See, e.g., Marsh v. J. Alexander's LLC*, 905 F.3d 610, 625 (9th Cir. 2018) (en banc); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 879-81 (8th Cir. 2011).

### C.     The 2020 Regulation Rescinding the 80/20 Guidance

In 2018 and 2019, the Department of Labor issued an opinion letter and updated handbook, respectively, that rescinded the longstanding 80/20 guidance. ROA.481-86. Under the new guidance, employers could look to the Occupational Information Network (O*NET)—a database of descriptive occupational information published by the Department of Labor's Employment and Training Administration— to determine which duties were considered "directly related to the tip-producing duties" of an occupation. ROA.483. If a duty was listed in that database, no limitation would be placed on the amount of time employees spent performing that potentially non-tipped duty, so long as the duty was performed "contemporaneously with" or "for a reasonable time immediately before or after" the employee's duties involving direct service to customers. ROA.483-84. The opinion letter did not define what would constitute a "reasonable time." *See* ROA.484.

In private litigation brought by employees, courts largely refused to defer to the guidance in the 2018 opinion letter and 2019 handbook and instead continued to apply the 80/20 guidance in determining whether an employer was entitled to take a tip credit for related duties. *See Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1179 (11th Cir.

2021) (concluding that the 2018 opinion letter is not a reasonable interpretation of the

1967 regulation, declining to defer to it, and instead applying a twenty-percent

limitation on the hours that a tipped employee may perform non-tipped related tasks);

*Roberson v. Texas Roadhouse Mgmt. Corp.*, No. 3:19-cv-628, 2020 WL 7265860, at *6

(W.D. Ky. Dec. 10, 2020) (joining "the majority of other district courts in refusing to

grant deference" to the 2018 opinion letter or 2019 handbook); *see also* 86 Fed. Reg. at

60,118 n.3 (citing to multiple other district court decisions declining to defer to the

2018 guidance).

Nonetheless, the Department finalized a regulation in late 2020 that would

have largely codified its rescission of the 80/20 guidance.  85 Fed. Reg. 86,756 (Dec.

30, 2020).  The 2020 final rule amended 29 C.F.R. §531.56(e) to provide that

> an employer may take a tip credit for all non-tipped duties an employee
> performs that meet two requirements.  First, the duties must be related
> to the employee's tipped occupation; second, the employee must
> perform the related duties contemporaneously with the tip-producing
> activities or within a reasonable time immediately before or after the
> tipped activities.

*Id.* at 86,767.  The final rule stated that a non-tipped duty would be presumed to be

related to a tip-producing occupation if it is listed as a task of that occupation in

O*NET.  *Id.* at 86,771.

## D.    The 2021 Regulation Reinstating the 80/20 Guidance

The dual jobs provisions of the 2020 rule never went into effect.  After the

change of administration, the Department of Labor postponed that rule's effective

date from March 1, 2021, until December 31, 2021.  86 Fed. Reg. 11,632 (Feb. 26, 2021) (extending the effective date to April 30, 2021); 86 Fed. Reg. 22,597 (Apr. 29, 2021) (extending the effective date for the dual jobs part of the rule to December 31, 2021).

During that period, the Department of Labor issued a notice of proposed rulemaking to withdraw the dual jobs provisions of the 2020 regulation and reaffirm limits on non-tipped work, by largely codifying the 80/20 guidance with certain refinements that clarified what types of work would and would not count toward the limitation on non-tipped work.  *See* 86 Fed. Reg. 32,818 (June 23, 2021) (proposed rule).  The Department made significant adjustments to the proposed rule in response to comments from the restaurant industry and others and issued a final rule on October 29, 2021.  86 Fed. Reg. 60,114 (Oct. 29, 2021).  That final rule, which took effect on December 28, 2021, is the subject of this appeal.

Like the 1967 dual jobs regulation and the 80/20 guidance, the 2021 rule established a substantial but limited tolerance for employers claiming a tip credit for time that tipped employees spend performing non-tipped duties related to their tipped work.  The 2021 rule provides that an employee is "engaged in a tipped occupation when the employee performs work that is part of the tipped occupation" and that an employer "may only take a tip credit for work performed by a tipped employee that is part of the employee's tipped occupation."  86 Fed. Reg. at 60,157 (codified at 29 C.F.R. § 531.56(f)).  The rule further defines "work that is part of the tipped

occupation" as (1) work that "produces tips"—that is, work that "provides service to customers for which the tipped employee receives tips," such as a waiter "providing table service" or a bartender "making and serving drinks"—as well as (2) work that "directly supports the tip-producing work, if the directly supporting work is not performed for a substantial amount of time." *Id.* (codified at 29 C.F.R. § 531.56(f)(3)).

The 2021 rule makes clear, however, that the limited tolerance for work that "directly supports the tip-producing work" is limited to work "performed by a tipped employee in preparation of or to otherwise assist tip-producing customer service work," such as a server's "dining room prep work, such as refilling salt and pepper shakers and ketchup bottles, rolling silverware, folding napkins, sweeping or vacuuming under tables in the dining area, and setting and bussing tables." 86 Fed. Reg. at 60,157 (codified at 29 C.F.R. § 531.56(f)(3)). An employer may not take the tip credit for other types of work that does not directly support tip-producing work, such as a server "[p]reparing food, including salads, and cleaning the kitchen or bathrooms." *Id.* at 60,158 (codified at 29 C.F.R. § 531.56(f)(5)).

The 2021 rule further provides that employers may not claim the tip credit when an employee has performed non-tipped, directly supporting work for a substantial amount of time. The rule largely codifies the Department's longstanding 80/20 guidance by providing that an employer cannot take the tip credit for directly supporting work that "exceeds 20 percent of the hours worked during the employee's work week." 86 Fed. Reg. at 60,133, 60,158 (codified at 29 C.F.R. § 531.56(f)(4)).

The rule also includes an additional protection for workers by providing that employers may no longer take a tip credit once an employee has performed more than 30 continuous minutes of directly supporting work. *Id.*

## II.    District Court Proceedings

### A.    The Order Denying A Preliminary Injunction

Plaintiffs are the Restaurant Law Center and the Texas Restaurant Association, which represent restaurant owners located across the United States. Plaintiffs challenged the 2021 rule on various grounds. ROA.11. On December 17, 2021— more than a month and a half after the rule had been published and shortly before it was due to take effect—plaintiffs moved for a preliminary injunction. ROA.276-322. The district court held an evidentiary hearing on plaintiffs' motion on February 9, 2022, ROA.661-757, and denied the motion on February 22, 2022, ROA.630-39.

In its opinion, the court indicated that it was "skeptical of Plaintiffs' likelihood of success on the merits" but that it need not opine on that question because plaintiffs had failed to establish a substantial likelihood that the rule would cause their members irreparable harm before a decision on the merits could be issued. ROA.633 & n.3. In so ruling, the district court acknowledged that some employers may have incurred costs to prepare for the 2021 rule's implementation, such as by spending time to familiarize themselves with the rule's requirements and making upfront changes to employee scheduling to ensure compliance with those requirements. ROA.634, 638. The court noted, however, that the 2021 rule had taken effect more than a month

earlier and that such preparatory costs should already have been incurred. ROA.634, 638.

Furthermore, the district court explained that plaintiffs' declarations and testimony were devoid of any specific details regarding costs that either had been incurred or would be incurred by plaintiffs and their members; instead, the declarations and testimony consisted only of "speculative concerns, conclusory claims, and uncredible assertions." ROA.638. The court also found plaintiffs' claim that compliance with the 2021 regulation was "unworkably burdensome" was not credible "given the decades-long operation of the similar 80/20 guidance." ROA.634, 638. And the court explained that the fact that plaintiffs had "waited until the eve of the Rule's entry into force and still offer only meager support for their claims further detracts from the gravity of their claims." ROA.638. The court thus denied the motion for a preliminary injunction.

### B.     Ongoing District Court Proceedings

Although plaintiffs appealed the order denying their motion for a preliminary injunction, district court proceedings have continued pursuant to an agreed scheduling order. *See* Dkt. No. 34. Cross-motions for summary judgment were fully briefed as of June 13, 2022. Plaintiffs have requested expedited consideration and oral argument. *See* Dkt. No. 41.

## SUMMARY OF ARGUMENT

At issue in this interlocutory appeal is plaintiffs' request for a preliminary injunction of a regulation that largely reinstates an approach to the tip credit that governed the restaurant industry for three decades. The district court denied plaintiffs' motion on the ground that plaintiffs had failed to establish that their members would experience irreparable harm before a decision on the merits could issue.

In reaching that conclusion, the district court acknowledged that employers generally may have incurred costs associated with the implementation of the 2021 rule, such as, for example, by implementing new systems or reassigning employees' assigned duties to ensure that the employer could continue to take the tip credit under the rule's requirements. Because the plaintiffs had waited until shortly before the rule was due to take effect to seek a preliminary injunction, however, the rule had already taken effect at the time of the evidentiary hearing and the court's decision. The district court thus found that any such upfront costs should already have been incurred, and that plaintiffs' declarations and testimony did not provide any credible evidence to the contrary.

On appeal, plaintiffs reassert their claim that their members are suffering substantial, ongoing compliance costs as a result of the Department's rule. But plaintiffs' cited evidence—which was presented to, and rejected by, the district court

after an evidentiary hearing—does not demonstrate error in the district court's findings.

To the contrary, as the district court explained, plaintiffs' assertion of ongoing harm is based on an erroneous belief that 2021 rule would require unworkably burdensome monitoring of employee time in order to take the tip credit. The rule does not impose such requirements. Moreover, the district court found that the declarations and testimony submitted by the plaintiffs in support of their claims of ongoing costs being incurred by their members contained nothing more than "speculative concerns, conclusory claims, and uncredible assertions." ROA.638. And in particular, the court found plaintiffs' insistence that compliance with the rule would require restaurant owners to forego taking the tip credit altogether to be "wholly uncredible," given the rule's similarity to the longstanding 80/20 guidance that applied to the restaurant industry for decades. ROA.638.

Because plaintiffs have not established any error in the district court's findings regarding irreparable harm, this Court should affirm. But even if this Court were to disagree with the district court's reasoned conclusion regarding irreparable harm, this Court should decline plaintiffs' invitation to address the merits of the case in the first instance, and instead, remand to the district court for consideration of the remaining preliminary injunction factors. As of the date of this filing, plaintiffs' arguments on the merits have been fully briefed in summary-judgment motions currently pending before the district court, and plaintiffs have requested expedited consideration and

oral argument. In any event, plaintiffs' arguments that the 2021 rule is contrary to law are based on an interpretation of the FLSA that has been, almost without exception, uniformly rejected by other courts of appeals, and that is entirely without merit. For these reasons, this Court should affirm.

## STANDARD OF REVIEW

This Court reviews the grant or denial of a preliminary injunction for abuse of discretion, with any underlying legal determinations reviewed de novo and factual findings for clear error. *Topletz v. Skinner*, 7 F.4th 284, 293 (5th Cir. 2021).

## ARGUMENT

### I.    The District Court Correctly Found That Plaintiffs Failed To Substantiate Their Assertions Of Irreparable Harm

A preliminary injunction is an "extraordinary remedy" that may not be granted unless the movant establishes (among other things) that it is "likely to suffer irreparable harm before a decision on the merits can be rendered." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (internal quotation omitted). The district court correctly found, after an evidentiary hearing, that plaintiffs failed to make that showing. The court therefore appropriately denied plaintiffs' motion for a preliminary injunction without addressing the plaintiffs' likelihood of success on the merits or the other equitable factors.

**A.** The district court found—in the absence of specific evidence to the contrary—that the costs associated with preparing for compliance with the 2021 rule

"should have already been incurred" by the time of the court's decision and thus did not provide a basis for a preliminary injunction. ROA.634, 638.

In reaching that conclusion, the district court recognized that employers generally need to familiarize themselves with a new rule's requirements, *see* ROA.634, and that some employers may have implemented new systems or reassigned employees' assigned duties in order to ensure compliance with the 2021 rule's requirements, *see* ROA.638 n.6; *see also, e.g.*, 86 Fed. Reg. at 60,142 (noting that although "many employers likely would not need to make any adjustments," some employers may need to spend, on average, one hour of time to "adjust their business practices and staffing to ensure that workers do not spend more than 20 percent of their time on directly supporting work, and that directly supporting work does not exceed more than 30 minutes continuously").

However, the district court explained that plaintiffs had waited until shortly before the rule was due to take effect to seek a preliminary injunction. By the time of the evidentiary hearing and decision, the rule had already taken effect. *See* ROA.634. The district court thus found that such upfront costs should already have been incurred and that plaintiffs' declarations and testimony did not provide any specific evidence to the contrary. ROA.634, 638.

**B.** Plaintiffs' brief on appeal dedicates only a few short pages to irreparable harm, which was the sole question decided by the district court. In that brief discussion, plaintiffs argue that the district court's finding that compliance costs

should already have been incurred was inconsistent with the allegedly "unrebutted" evidence that they submitted (Br. 13) showing that plaintiffs' members were suffering ongoing compliance costs as a result of the Department's rule. Plaintiffs cite two categories of evidence that they argue support their claim of irreparable harm: declarations that they submitted to the district court and the Department's own cost analysis articulated in the final rule. Neither source demonstrates error in the district court's findings.

1.  Plaintiffs rely (as they did in district court) on the declarations and testimony of Angelo Amador, the Executive Director of the Restaurant Law Center and plaintiffs' counsel in this litigation, as well as Emily Williams Knight, the President and CEO of plaintiff Texas Restaurant Association, and Tracy Vaught, a restaurant owner in Texas. *See* Br. 18. But the district court carefully analyzed each of these declarations and found them to be largely not credible for three separate, but mutually reinforcing, reasons.

*First*, the district court found that plaintiffs' claim that the 2021 rule imposed substantial, ongoing compliance costs was largely based on an erroneous belief that compliance with the rule required detailed monitoring and recordkeeping of employees. ROA.634. As the district court explained, the rule does not impose such requirements. ROA.634.

As explained above, the rule announces that when an individual is employed in both a tipped occupation and a non-tipped occupation, the tip credit is available only

19

for the hours the employee spends working in the tipped occupation.  86 Fed. Reg. at

60,157 (codified at 29 C.F.R. § 531.56(e)).  The rule further defines "work that is part

of the tipped occupation" as work that "produces tips" as well as work that "directly

supports tip-producing work, if the directly supporting work is not performed for a

substantial amount of time."  *Id.* (codified at 29 C.F.R. § 531.56(f)(1)).  And the rule

specifies that an employee has performed directly supporting work for a substantial

amount of time when the directly supporting work "exceeds 20 percent of the hours

worked during the employee's workweek" or that "[f]or any continuous period of

time . . . exceeds 30 minutes."  *Id.* at 60,133, 60,158 (codified at 29 C.F.R.

§ 531.56(f)(4)).

Notably, the rule expressly states that it has "no recordkeeping requirement."

86 Fed. Reg. at 60,137, 60,140.  And as the Department of Labor explained in

response to comments it received on the proposed rule, employers need not engage in

"minute to minute" tracking of an employee's time in order to ensure that they qualify

for the tip credit.  *See id.* at 60,154.  Instead, the Department clarified, a server is

considered to be performing tip-producing work for the purposes of the rule the

"entire time" they are providing service to customers, and such periods do not count

toward the 20-percent limit or the 30-minute limit for directly supporting work.

Those limits apply only when employees are assigned to preparatory work which is

"not part of providing service to a customer," such as when an employer assigns a

server to "fold[] napkins for the dinner rush after her lunch customers leave," or to "fill[] condiment containers . . . during lulls in customer service." *Id.* at 60,133.

Further, the Department explained, the rule has a generous threshold for non-tipped, directly supporting work. Twenty percent of an employee's workweek is "[e]qual to a full 8-hour workday in a 5-day, 40-hour workweek," 86 Fed. Reg. at 60,135, and "thirty minutes is a substantial period of time for a tipped employee to spend exclusively performing non-tipped, directly supporting work.," *id.* at 60,137. Indeed, like a "bona fide meal period" of at least 30 minutes, which "the Department has previously recognized . . . is a discrete and significant block of time that can be set apart from the work around it," "a 30-minute uninterrupted block of time during which an employee continuously performs non-tipped work can be readily distinguished from the work that surrounds it." *Id.* (citing 29 C.F.R. § 785.19(a)). Thus, employers who wish to avail themselves of the tip credit can ensure that they qualify to do so simply by making simple, upfront adjustments to scheduling, and declining to assign these tasks to employees for more than a substantial amount of time. *See* 86 Fed. Reg. at 60,133. If they do so, monitoring of employees will generally not be required in order to comply with the rule's requirements.

*Second*, the district court found that plaintiffs' claim that the 2021 rule would require "unworkably burdensome" changes to restaurants' business practices was

"particularly difficult to support," ROA.634-35, given that the rule largely "codifies" a standard for taking the tip credit that applied for decades, ROA.632, 634-35, 638.

As described above, the Department of Labor first promulgated regulations addressing when employers may take the tip credit for employees working in "dual jobs" in 1967. That regulation recognized that an employee may be employed to perform two separate jobs, a tipped job and a non-tipped job, and provided that in such a "dual jobs" situation, a tip credit may be taken only for the time spent in the tipped occupation. 29 C.F.R. § 531.56(e) (2020). The regulation distinguished this situation from one in which an employee in a tipped occupation performs related duties that are not "themselves . . . directed towards producing tips," using the example of a server who spends "part of her time" performing duties such as "cleaning tables" or "washing dishes." *Id.* The regulation further provided that in the latter category, where the tipped employee performs non-tipped duties related to the tipped occupation for a limited period of time, the employee continues to be engaged in a tipped occupation for which the employer could take a tip credit. And in 1988, the Department of Labor issued guidance interpreting that regulation which—like the 2021 rule—limited the allowance for taking the tip credit for time spent on related, non-tip-producing work to up to twenty percent of the employee's time. ROA.480.

Thus, although plaintiffs' declarants asserted that the challenged regulation imposed novel limitations on the tip credit—including the twenty-percent limitation on directly supporting work—the 80/20 guidance was in place for most of three

decades and had been upheld by multiple courts of appeal before it was rescinded in 2018.  ROA.632-33; *see, e.g.*, *Marsh*, 905 F.3d at 632; *Fast*, 638 F.3d at 879.  And even after the Department rescinded the 80/20 guidance in 2018, courts in private litigation almost universally continued to hold restaurant employers to a twenty-percent threshold, *see* ROA.632; *Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1179 (11th Cir. 2021); *Rorie v. WSP2, LLC*, 485 F. Supp. 3d 1037, 1041 (W.D. Ark. 2020) (collecting district court cases and observing that "[w]ith one lone exception, all courts that have examined the issue have declined to extend the [rescission] any deference at all"); *see also* 86 Fed. Reg. at 60,118 n.3.

Plaintiffs' declarations—which, as the district court noted, contained only vague generalizations regarding unspecified members who allegedly will need to make unworkably burdensome changes to their businesses in order to comply with the 2021 rule—failed to explain why such changes were necessary given the rule's similarity to the longstanding 80/20 guidance.  *See* ROA.634-38.  Presumably, employers had been complying with the twenty-percent tolerance set forth in that guidance for more than three decades.  And, as discussed further below, plaintiffs provided no evidence or credible argument that the rule's additional restriction that employers may no longer take a tip credit once an employee has performed more than 30 minutes of continuous directly supporting work would require any significant changes to employers' business practices.

23

*Third*, the district court found that plaintiffs' declarations and testimony contained nothing more than "speculative concerns, conclusory claims, and uncredible assertions" about allegedly ongoing compliance costs.  ROA.638.

The declaration of Mr. Amador, who is also counsel in this case, for example, stated "opaquely" that he had spent "considerable time" discussing the concerns of plaintiff Restaurant Law Center's members regarding the Department's rule. ROA.635.  But Mr. Amador's vague references to conversations with Restaurant Law Center members all largely occurred prior to the promulgation of the final rule in October 2021, which had significant modifications from the Department's original proposal that were made in response to industry comments.  Indeed, Mr. Amador mentioned "only one event occurring after the rule was promulgated in its final form, a November 3, 2021" meeting that occurred before the rule went into effect, and his declaration provided "no details regarding . . . the specific concerns" identified in that meeting.  ROA.635.

Further, with respect to allegedly ongoing costs, Mr. Amador's declaration relied exclusively on hearsay and for the most part referred only vaguely to potential harms faced by unidentified members of his trade associations.  But most of Mr. Amador's "rough generalizations" about potential harms were costs that would already have been incurred (or substantially incurred) before the rule's implementation.  For example, Mr. Amador described costs associated with reading and understanding the rule, ROA.383, ¶ 19.a; conducting a cost analysis to prepare for

24

the rule's implementation, ROA.383-84, ¶ 19.b; and establishing upfront policies and procedures to ensure compliance in advance of the rule's implementation, ROA.385, ¶ 19.d. His declaration thus supported the district court's conclusion that any compliance costs should have already been incurred.

With respect to any allegedly remaining costs, Mr. Amador failed to provide any specific evidence to support his claim of ongoing harms. As the district court explained, Mr. Amador did not elaborate regarding, *inter alia*, which restaurants he spoke with or when he did so. ROA.635. And "almost nowhere" did "he provide concrete evidence" that any members had incurred any compliance costs, or even provide "rough estimates" of those alleged costs. ROA.636. In fact, Mr. Amador provided only one specific example in his declaration, in which he "recall[ed] speaking with an unnamed 'small restaurant owner in Virginia'" who for "an undisclosed reason[]" allegedly would "not be able to use the tip credit under the Final Rule" and would have to pay the "Virginia minimum wage of $7.25 instead of the tipped wage of $2.13." ROA.636 (quoting ROA.384). But Mr. Amador did not explain "why the owner would be unable to continue using the tip credit with the modest changes made by the Rule," and the district court was appropriately "hesitant to read in any unexplained harms from the obligation to pay a modest $7.25 minimum wage." ROA.636.

Further, although the 2021 rule had been in effect for over a month at the time of the evidentiary hearing, on cross-examination, Mr. Amador "was repeatedly unable

to articulate any dates, specific parties, or any more than the broad outlines of conversations he had purporting to demonstrate the incredible burden on restaurants." ROA.636-37.  The district court thus concluded that Mr. Amador's testimony was too "speculative and self-serving" to support a finding of irreparable harm.  ROA.637.

The other declarations suffered from similar flaws.  As the district court explained, the declaration by Ms. Knight largely "repeats the same information" as Mr. Amador's declaration, modified for the Texas Restaurant Association context, and thus was unpersuasive for the same reasons.  ROA.635 n.4.  And plaintiffs provided only one declaration from a restaurant owner, Tracy Vaught, in support of their claim of irreparable harm.  Ms. Vaught, who "owns five restaurants across Texas," speculated, without reasoned explanation, that "it is impossible to comply with the Final Rule" and that her restaurant group "may not be able to take the tip credit at all."  ROA.637 (quoting ROA.396).  Ms. Vaught predicted that if she chose to pay the federal minimum wage instead of taking the tip credit, she would spend "close to one million dollars extra per year on labor."  ROA.637 (quoting ROA.396).

The district court properly rejected Ms. Vaught's unsupported assertion that she or others might have to stop taking the tip credit because it was "impossible" to comply with the final rule.  ROA.637-38.  To the contrary, the court observed, that unexplained assertion was not credible "given the decades-long operation of the similar 80/20 guidance."  ROA.638.  Ms. Vaught did not provide any support for her

26

assertion that compliance with the rule would cost more than the one million dollars in labor that she would allegedly spend if she elected to forego the tip credit, and the district court correctly found her "[p]ure conjecture" on this score to be "wholly uncredible." ROA.638.[2]

**2.** Plaintiffs' reliance (Br. 19-20) on the Department of Labor's costs projections in the final rule is likewise misplaced. That cost analysis supported, rather than detracted from, the district court's findings on irreparable harm.

In the relevant portion of the final rule, the Department stated that it "believes that th[e] rule may result in three types of costs to employers": "[r]egulatory familiarization costs . . . associated with reviewing the new regulation"; "adjustment costs" associated with, *inter alia*, adjusting employee staffing to reassign duties to comply with the rules requirements; and "management costs." 86 Fed. Reg. at 60,140-42. Consistent with the district court's finding that any compliance costs should already have been incurred by plaintiffs and their members, the Department explained that the first two types of costs were upfront expenditures of time that would each take, on average, only one hour of time per employer. *Id.*

---

[2] Plaintiffs rely upon (Br. 20-21) a question posed by the district court to erroneously suggest that the court "acknowledged" that Ms. Vaught would have to spend one million dollars per year to comply with the final rule if she elected to forego the tip credit. In so arguing, plaintiffs ignore the district court's express finding that the final rule does not compel any restaurant owners to forego taking the tip credit, and that Ms. Vaught's claims that she might have to do so were "wholly uncredible." ROA.638.

Indeed, the Department explained, many employers will not need to spend substantial time reviewing the rule, because employers are "familiar with a 20 percent tolerance, which is part of what is being put forth in this rule." 86 Fed. Reg. at 60,142. Likewise, because that tolerance had governed the industry for decades, many employers would not need to make any alterations to their business practices because "the work that their tipped employees perform complies with the requirements set forth in this rule." *Id.* at 60,142.

Moreover, although the Department acknowledged that "some employers" may incur ongoing management costs after the rule's implementation, its analysis on this score was consistent with the district court's finding that plaintiffs' allegations of harm are entirely speculative and not credible. The Department explained that monitoring of employee time would be unnecessary for many employers "already set up in a way where the work their tipped employees perform complies with the" rule. 86 Fed. Reg. at 60,142. And although "some employers" may need to have managers review employee's assigned tasks in order "to ensure that tipped employees are not spending more than 20 percent of their time on directly supporting work per workweek, or more than 30 minutes continuously performing such duties," the Department estimated that, on average, employers would spend *only 10 minutes per week* on such tasks. *Id.* That estimate stands in stark contrast to the speculation of plaintiffs' declarants that compliance with the rule requires such extensive and costly

monitoring of employee time that some employers might elect to forego taking the tip credit altogether.

## II.    Plaintiffs Failed To Show A Likelihood Of Success On The Merits

As discussed above, the district court's finding that plaintiffs failed to establish irreparable harm was correct, and for that reason, this Court should affirm.  To the extent that this Court disagrees, however, the appropriate course of action would be to remand to the district court to address the remaining preliminary injunction factors.  In its opinion denying a preliminary injunction, the district court did not reach the merits of plaintiffs' claims.  However, as of the date of this filing, cross-motions for summary judgment on the merits of plaintiffs' claims are now fully briefed and pending before the district court.  There is thus no occasion for this Court to address the merits of plaintiffs' claims in the first instance in this interlocutory posture.  Nevertheless, because plaintiffs and their amici address the merits extensively, we address the issues briefly below.

**A.**  The FLSA allows employers to take a credit towards the minimum wage for a "tipped employee," which the statute defines as "any employee engaged in an occupation in which he customarily and regularly receives more than" a specified amount in tips.  29 U.S.C. § 203(t).  Congress did not further define what it means to be "engaged in" such an occupation or clarify what mix of tasks are associated with such occupations.  Instead, Congress expressly delegated to the Secretary of Labor the authority to implement the 1966 amendments, which included the tip-credit

provision.  Pub. L. No. 89-601, § 602, 80 Stat. at 844.  "[T]hat grant of authority

"'provides the Department with the power to fill . . . gaps through rules and

regulation[]' . . . ."  *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1091 (D.C. Cir.

2015) (second alteration in original) (quoting *Long Island Care at Home, Ltd. v. Coke*, 551

U.S. 158, 165 (2007)) (interpreting the materially identical delegation of authority in

the FLSA's 1974 amendments).

In the regulation promulgated the year after the 1966 amendments were

enacted, the Department of Labor specified that a person "employed in a dual job"—

that is, an employee who does work for which they receive tips (such as waiting

tables) as well as work for which they do not receive tips (such as janitorial work)—"is

a tipped employee only with respect to his employment as a waiter" and that "no tip

credit may be taken for his hours of employment in his occupation of maintenance

man."  32 Fed. Reg. at 13,580-81 (codified at 29 C.F.R. § 531.56(e) (1967)).  At the

same time, the regulation recognized that an employee in a tipped occupation—the

regulation used the example of a server—may spend "part of her time" performing

"related duties" that are not "themselves . . . directed toward producing tips," such as,

as noted above, "cleaning and setting tables, toasting bread, making coffee, and

occasionally washing dishes or glasses."  *Id.*  The Department's longstanding guidance

interpreting that regulation, known as the "80/20 Rule," clarified that employers

could take the tip credit for time that an employee in a tipped occupation spent on

such related, non-tipped duties, so long as the employee did not perform such duties for more than twenty percent of their work week.

The 1967 rule, as interpreted by the Department's guidance, thus recognized that when a tipped employee performs too much non-tipped related work, the employee is no longer engaged in a tipped occupation within the meaning of the FLSA. And the regulation and guidance prevented employers from abusing the statute's tip credit by giving an employee a single job title (such as "server") but assigning the employee a significant amount of work that was not tip-producing, thereby essentially employing the individual in a non-tipped occupation. *See supra* pp. 8-10, 22-23.

The longstanding guidance was upheld in the face of challenges by the restaurant industry. *See, e.g., Marsh v. J. Alexander's LLC*, 905 F.3d 610, 625 (9th Cir. 2018) (en banc); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 879-81 (8th Cir. 2011); *Flood v. Carlson Rests. Inc.*, 94 F. Supp.3d 572, 583-84 (S.D.N.Y. 2015) (collecting cases to demonstrate that "district courts across the country" "have consistently endorsed the twenty percent rule"). And when the Department attempted to withdraw it, courts declared the recission unreasonable and continued to apply the "80/20 Rule" instead. *See, e.g., Rafferty*, 13 F.4th at 1179; *Roberson v. Texas Roadhouse Mgmt. Corp.*, No. 3:19-cv-0628, 2020 WL 7265860, at *6 (W.D. Ky. Dec. 10, 2020) (joining "the majority of other district courts in refusing to afford any deference" to the 2018 rescission).

Plaintiffs nonetheless insist that the plain language of the FLSA's tip-credit provision precludes consideration of "the relative mix of specific tasks within a job" and that the focus must be on "the job as a whole." Br. 32. As the Ninth Circuit explained in its en banc decision in *Marsh*, that argument "rests on an artificial distinction between occupations and duties"; "[o]ne cannot define the former without some reference to the latter." *Marsh*, 905 F.3d at 629. Indeed, even the (rescinded) 2020 rule would have required consideration of the relative mix of specific tasks within a job. *See* 85 Fed. Reg. at 86,767 (allowing a tip credit for non-tipped duties only if the duties are "related to the employee's tipped occupation" and performed "contemporaneously" with or "within a reasonable time immediately before or after the tipped activities").[3]

Plaintiffs' position would also undermine a central purpose of the FLSA's tip-credit provision, which is to ensure that tipped employees who are paid a reduced direct wage receive the value of the tips they earn from tip-producing work and to prevent employers from appropriating tipped employees' tips for themselves. *See, e.g.,* 29 U.S.C. § 203(m)(2)(A), (B); *see also* S. Rep. No. 93-690, at 42-43 (1974) (noting that Congress amended the tip-credit provision to add these protections because "the

---

[3] Plaintiffs rely (Br. 38) on the two-judge dissent from the en banc decision in *Marsh*. But that dissenting opinion was not interpreting the statutory term "occupation"; it was addressing whether the 80/20 guidance was an interpretive rule or a legislative rule requiring notice and comment. *See Marsh*, 905 F.3d at 645 (Ikuta, J., dissenting).

tipped employee should have stronger protection to ensure the fair operation" of the tip-credit provision and to "make clear the original Congressional intent that an employer could not use the tips of a 'tipped employee' to satisfy more than" the permitted amount of the minimum wage). Under plaintiffs' approach, an employer could take a tip credit for all work performed by an employee so long as the employer gave the employee a job title associated with tipped work. That would mean that, instead of paying one employee $7.25 an hour to do non-tipped work, such as cleaning bathrooms, mowing the lawn, or washing dishes, a restaurant could require an employee whom it hired as a server to perform such duties for, for instance, an entire shift, and pay them just $2.13 an hour, so long as the employee earns enough in tips from their time waiting tables to bring their total earnings up to $7.25 per hour. That approach would effectively appropriate the tips from the employees' tip-producing work to subsidize wages for work that neither produces tips nor directly supports tip-producing work.

Contrary to plaintiffs' suggestion, nothing in the legislative history supports their position. Plaintiffs cite a 1966 Senate committee report stating that the tip-credit provisions are "sufficiently flexible to permit the continuance of existing practices with respect to tips." Br. 34 (emphasis omitted) (citing S. Rep. No. 89-1487, at 12, 13). But the "existing practices" to which that report referred related to the actual handling of tips, not the payment of a reduced wage for work that is not part of the tipped occupation. S. Rep. No. 89-1487, at 13. Moreover, the existing practices

discussed in the 1966 Senate committee report were restricted by subsequent statutory amendments.[4]

Plaintiffs also emphasize that the same committee report described the definition of a "tipped employee" as "analogous to the reporting requirement for a tipped employee under the provisions of the Social Security Act of 1965." Br. 34-35 (emphasis omitted) (citing S. Rep. No. 89-1487 at 12). But that language simply reflected the fact that the monthly minimum tip threshold in the original definition of "tipped employee" was the same as the monthly threshold for reportable cash tips in the Social Security Act. *Compare* Pub. L. No. 89-601, § 101(b), 80 Stat. at 830 (codified as amended at 29 U.S.C. § 203(t)), *with* Pub. L. No. 89-97, § 313, 79 Stat. 286, 382 (1965) (codified at 42 U.S.C. § 409(a)(10)(B)).

Plaintiffs' reliance on the legislative history surrounding the 1974 amendments to the FLSA is equally unavailing. Plaintiffs claim that a Senate committee report concerning those amendments defines "occupation" in terms of a job title and not in terms of regular work or business activities. Br. 6 (citing S. Rep. No. 93-690, at 43). But the passage that plaintiffs cite addressed which employees may participate in a

---

[4] The 1966 Senate report described a permissible approach to tip pools, *see* S. Rep. No. 89-1487, at 12, but subsequent amendments limit tip pools to employees who traditionally receive tips, *see* Pub. L. No. 93-259, § 13, 88 Stat. 55, 64-65 (1974). The 1966 Senate report also described the practice of an employer confiscating all of an employee's tips as receipts and paying that employee a full minimum wage. *See* S. Rep. No. 89-1487, at 12. That practice is now clearly prohibited. *See* Pub. L. No. 115-141, § 1201, 132 Stat. 348, 1148-49 (2018) (codified at 29 U.S.C. § 203(m)(2)(B)).

traditional tip pool under provisions added to the FLSA in connection with that report, not how to determine whether an employee is a tipped employee for the purpose of the tip credit. *See also Marsh*, 905 F.3d at 622 (noting that "the legislation accompanying the 1974 report did not make any changes to [29 U.S.C. §] 203(t)").

In short, there is no merit to plaintiffs' contention that the longstanding dual jobs regulation and the 2021 rule's approach, which more precisely defined the contours of the longstanding 80/20 guidance, are contrary to law.

**B.** Plaintiffs' contention that the 2021 rule is arbitrary and capricious in various respects, Br. 39-47, is equally meritless.

**1.** As discussed above, the 2021 rule largely codified the 80/20 guidance that was in place for decades. The preamble set out in detail the Department's reasons for doing so. For example, the Department explained that tipped employees can receive as little as $2.13 per hour in direct cash wages, 86 Fed. Reg. at 60,120-21, 60,124; that the rule was necessary to ensure that these workers "do not receive a reduced direct cash wage when they are not engaged in a tipped occupation," *id.* at 60,121; and that the best way to achieve this goal was to adopt a "functional test" to determine when an employee is performing the work of a tipped occupation, *id.* at 60,126. The Department also noted that this approach could be readily adapted to categorize new duties in the future. *Id.* This reasoning, along with the additional explanation set forth in the preamble, provides ample support for the Department's policy choices. *See Texas Oil & Gas Ass'n v. U.S. EPA*, 161 F.3d 923, 934 (5th Cir. 1998).

Plaintiffs contend (Br. 41-42) that the Department instead should have examined the "real-word duties" of various tipped occupations. That argument simply reflects plaintiffs' policy preference for an approach that makes the tip-credit dependent on the job title that the employer assigns. The Department explained why it did not adopt that approach, and its explanation was consistent with the concerns raised by multiple courts after the 2018 opinion letter replaced the 80/20 guidance with an approach based on the O*NET database, which collects information from employees about their existing job duties. *See, e.g.*, *Rafferty*, 13 F.4th at 1185 (concluding that use of O*NET "creates a risk that unlawful practices will become entrenched in high-violation industries by setting up a fox-guarding-the-henhouse situation: simply by requiring tipped employees to perform untipped duties—whether those duties are, in fact, related or not to their tipped duties—employers effectively render the untipped duties 'related'").

Although plaintiffs express doubt that this problem "actually exists," Br. 40, they are wrong to suggest formal "fact-finding" was required. *See, e.g.*, *Superior Oil Co. v. FERC*, 563 F.2d 191, 200 (5th Cir. 1977) (explaining that in an informal rulemaking, an agency "need not make findings of fact in the conventional sense"). Instead, the Administrative Procedure Act requires only that an agency engaged in notice-and-comment rulemaking illustrate that it has "reasonably considered the relevant issues" by "respond[ing] to 'significant points' and consider[ing] 'all relevant factors' raised by the public comments." *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 449 (5th Cir.

2021) (first quoting *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021); and then quoting *Carlson v. Postal Regulatory Comm'n*, 938 F.3d 337, 344 (D.C. Cir. 2019)). The Department, which made considerable revisions to its proposal in response to public comments and extensively addressed the comments with which it disagreed, did just that.

**2.**   Plaintiffs and their amici also highlight comments from the Small Business Administration's Office of Advocacy (SBA), which urged that the Department of Labor had underestimated compliance costs for small employers in the notice of proposed rulemaking.  Br. 43-44; *see also* Hospitality Org. Amicus Br. 12-16.  The SBA's concern was based upon a perception that compliance with the proposed rule would require costly "minute-to-minute" tracking.  ROA.373; *see also* Hospitality Org. Amicus Br. 5, 14-15.  Far from "ignor[ing]" these concerns, Br. 44, the Department made substantive adjustments to the content of the final rule to mitigate the concerns expressed in those comments.  *See* 86 Fed. Reg. at 60,153-54.  Among other changes, the final rule made clear that minute-to-minute tracking "is not required by the rule, and will also not be necessary to comply with the rule."  *Id.* at 60,154.  The Department also noted that some monitoring of duties would already have been in

place under the 2018 and 2019 guidance, to ensure that employees did not perform duties unrelated to their tipped occupation. *Id.* at 60,142, 60,154.[5]

**3.** Plaintiffs also argue that the Department should not have excluded wage data from 2020 in its cost-benefit analysis. Br. 43. But as the Department explained, it "chose not to examine data from 2020, as average hourly wages during that year increased as low-wage workers in the leisure and hospitality industry were out of work due to the COVID-19 pandemic, making meaningful comparisons difficult." 86 Fed. Reg. at 60,149.

**4.** Finally, plaintiffs argue that the rule is "internally inconsistent" in two ways. Br. 45-47. First, they contend that the rule improperly treats bussers and service bartenders as engaging in tip-producing work when engaged in tasks that directly support servers and would not qualify as tip-producing work if performed by a server.

---

[5] To support its assertion that employers will need to track employee time "down to the second" in order to comply with the 2021 rule, amici present the hypothetical of a server who performs "no fewer than 25" tasks within a 15-minute period while serving customers. *See* Hospitality Org. Amicus Br. 12, 22-23. But the Department clarified in the final rule that such monitoring was unnecessary because "an employer may take a tip credit when a worker is performing tip-producing work," such as serving customers, "even if the worker is also performing directly supporting work" during that time. 86 Fed. Reg. at 60,128. Indeed, the Department provided an example that largely mirrors the hypothetical posed by amici, and explained that "if a server takes customer orders at a table, sets the table she is serving, brings beverages to a third table, and puts on a fresh pot of coffee at the beverage station for all of her tables, before heading back to the second table to take customer order, the server is performing tip producing work for the entire time," and "there is no need for the server's employer to count *any* of this work toward the 20 percent or 30-minute limits." 86 Fed. Reg. at 60,133 (emphasis added).

But this treatment is not arbitrary.  The rule expressly recognizes that bussers and service bartenders customarily "receive tips from other tipped employees such as servers because they are supporting their customer service, tip-producing work."  86 Fed. Reg. at 60,128 n.28; *see also* S. Rep. No. 93-690, at 43 (recognizing "busboys" and "service bartenders" as "employees who customarily and regularly receive tips").  Put differently, the means by which and reasons why bussers and service bartenders receive tips differs from that of servers, and the categorization of their work under the rule reasonably reflects that distinction.

Second, plaintiffs argue that the rule is internally inconsistent because it treats the same duties differently depending on the context.  *See also* Hospitality Organization Amicus Br. 7.  But it is entirely reasonable for the Department to treat "service to customers for which the tipped employee receives tips" differently from duties performed in "preparation for serving customers" when defining what it means to be "engaged in a tipped occupation."  86 Fed. Reg. at 60,128.  For example, when a bartender retrieves a particular beer from the storeroom at the request of a customer sitting at the bar, the employee is performing a task directly for a customer for which they will receive a tip, and it makes eminent sense for the Department to categorize this task as "tip-producing."  Likewise, if the bartender retrieves cases of beer from the storeroom when no customers are present and in anticipation of their tip-producing work, the final rule properly categorizes those tasks as "directly

supporting" tip producing work, rather than tasks that, in and of themselves, produce tips.  In sum, the distinctions drawn in the rule are eminently reasonable.

## CONCLUSION

The order denying a preliminary injunction should be affirmed.

Respectfully submitted,

*Of Counsel:*

SEEMA NANDA
*Solicitor of Labor*

JENNIFER S. BRAND
*Associate Solicitor*

MARLA VAN BUREN
*Counsel for Child Labor and Fair Labor
    Standards Act Special Projects*

ERIN M. MOHAN
JAMES MORLATH
*Senior Attorneys
    U.S. Department of Labor*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney
    General*

ASHLEY C. HOFF
*United States Attorney*

ALISA B. KLEIN
*s/ Jennifer L. Utrecht*
JENNIFER L. UTRECHT
*Attorneys, Appellate Staff
    Civil Division, Room 7710
    U.S. Department of Justice
    950 Pennsylvania Avenue NW
    Washington, DC 20530
    (202) 353-9039
    Jennifer.l.utrecht@usdoj.gov*

July 2022

40

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.


*s/ Jennifer L. Utrecht*
Jennifer L. Utrecht

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,034 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Jennifer L. Utrecht*
Jennifer L. Utrecht

**ADDENDUM**

# TABLE OF CONTENTS

29 U.S.C. § 203(m) .................................................................................. A1

29 U.S.C. § 203(t) ................................................................................... A2

29 C.F.R. § 531.56 (2020) ...................................................................... A3

29 C.F.R. § 531.56 .................................................................................. A4

## 29 U.S.C. § 203 (excerpts)

## § 203(m)

**(m)(1)** "Wage" paid to any employee includes the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees: *Provided,* That the cost of board, lodging, or other facilities shall not be included as a part of the wage paid to any employee to the extent it is excluded therefrom under the terms of a bona fide collective-bargaining agreement applicable to the particular employee: *Provided further,* That the Secretary is authorized to determine the fair value of such board, lodging, or other facilities for defined classes of employees and in defined areas, based on average cost to the employer or to groups of employers similarly situated, or average value to groups of employees, or other appropriate measures of fair value. Such evaluations, where applicable and pertinent, shall be used in lieu of actual measure of cost in determining the wage paid to any employee.

**(2) (A)** In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to--

**(i)** the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and

**(ii)** an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 206(a)(1) of this title.

The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

**(B)** An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.

## § 203(t)

**(t)** "Tipped employee" means any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips.

**29 C.F.R. § 531.56 (2020)**

**§ 531.56 "More than $30 a month in tips" (excepts)**

**(a) In general.** An employee who receives tips, within the meaning of the Act, is a "tipped employee" under the definition in section 3(t) when, in the occupation in which he is engaged, the amounts he receives as tips customarily and regularly total "more than $30 a month." An employee employed in an occupation in which the tips he receives meet this minimum standard is a "tipped employee" for whom the wage credit provided by section 3(m) may be taken in computing the compensation due him under the Act for employment in such occupation, whether he is employed in it full time or part time. An employee employed full time or part time in an occupation in which he does not receive more than $30 a month in tips customarily and regularly is not a "tipped employee" within the meaning of the Act and must receive the full compensation required by its provisions in cash or allowable facilities without any deduction for tips received under the provisions of section 3(m).

. . .

**(e) Dual jobs.** In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

A3

**29 C.F.R. § 531.56**

**§ 531.56 "More than $30 a month in tips" (excepts)**

**(a) In general.** An employee who receives tips, within the meaning of the Act, is a "tipped employee" under the definition in section 3(t) when, in the occupation in which he is engaged, the amounts he receives as tips customarily and regularly total "more than $30 a month." An employee employed in an occupation in which the tips he or she receives meet the minimum standard in the preceding sentence is a "tipped employee" for whom the wage credit provided by section 3(m)(2)(A) may be taken in computing the compensation due him or her under the Act for employment in such occupation, whether he or she is employed in it full time or part time. An employee employed full time or part time in an occupation in which he or she does not receive more than $30 a month in tips customarily and regularly is not a "tipped employee" within the meaning of the Act and must receive the full compensation required by the provisions of the Act in cash or allowable facilities without any deduction for tips received under the provisions of section 3(m)(2)(A).

. . .

**(e) Dual jobs.** In some situations an employee is employed in dual jobs, as, for example, where a maintenance person in a hotel also works as a server. In such a situation if the employee customarily and regularly receives at least $30 a month in tips for the employee's work as a server, the employee is engaged in a tipped occupation only when employed as a server. The employee is employed in two occupations, and no tip credit can be taken for the employee's hours of employment in the occupation of maintenance person.

**(f) Engaged in a tipped occupation.** An employee is engaged in a tipped occupation when the employee performs work that is part of the tipped occupation. An employer may only take a tip credit for work performed by a tipped employee that is part of the employee's tipped occupation.

> **(1) Work that is part of the tipped occupation.** Work that is part of the tipped occupation is:
>
> > **(i)** Work that produces tips; and
> >
> > **(ii)** Work that directly supports the tip-producing work, if the directly supporting work is not performed for a substantial amount of time.
>
> **(2) Tip-producing work.**
>
> > **(i)** Tip-producing work is any work performed by a tipped employee that provides service to customers for which the tipped employee receives tips.

**(ii)** Examples: The following examples illustrate tip-producing work performed by a tipped employee that provides service to customers for which the tipped employee receives tips. A tipped employee's tip-producing work includes all aspects of the service to customers for which the tipped employee receives tips; this list is illustrative and is not exhaustive. A server's tip-producing work includes providing table service, such as taking orders, making recommendations, and serving food and drink. A bartender's tip-producing work includes making and serving drinks, talking to customers at the bar and, if the bar includes food service, serving food to customers. A nail technician's tip-producing work includes performing manicures and pedicures and assisting the patron to select the type of service. A busser's tip-producing work includes assisting servers with their tip-producing work for customers, such as table service, including filling water glasses, clearing dishes from tables, fetching and delivering items to and from tables, and bussing tables, including changing linens and setting tables. A parking attendant's tip-producing work includes parking and retrieving cars and moving cars in order to retrieve a car at the request of customer. A service bartender's tip-producing work includes preparing drinks for table service. A hotel housekeeper's tip-producing work includes cleaning hotel rooms. A hotel bellhop's tip-producing work includes assisting customers with their luggage. The tip-producing work of a tipped employee who both prepares and serves food to customers, such as a counterperson, includes preparing and serving food.

**(3) Directly supporting work.**

**(i)** Directly supporting work is work performed by a tipped employee in preparation of or to otherwise assist tip-producing customer service work.

**(ii)** Examples: The following examples illustrate tasks that are directly supporting work when they are performed in preparation of or to otherwise assist tip-producing customer service work and when they do not provide service to customers. This list is illustrative and is not exhaustive: A server's directly supporting work includes dining room prep work, such as refilling salt and pepper shakers and ketchup bottles, rolling silverware, folding napkins, sweeping or vacuuming under tables in the dining area, and setting and bussing tables. A busser's directly supporting work includes pre- and post-table service prep work such as folding napkins and rolling silverware, stocking the busser station, and vacuuming the dining room, as well as wiping down soda machines, ice dispensers, food warmers, and other equipment in the service alley. A bartender's directly supporting work includes work such as slicing and pitting fruit for drinks, wiping down the bar or tables in the bar area, cleaning bar glasses, arranging bottles in the bar, fetching liquor and supplies,

vacuuming under tables in the bar area, cleaning ice coolers and bar mats, making drink mixes, and filling up dispensers with drink mixes. A nail technician's directly supporting work includes cleaning pedicure baths between customers, cleaning and sterilizing private salon rooms between customers, and cleaning tools and the floor of the salon. A parking attendant's directly supporting work includes cleaning the valet stand and parking area, and moving cars around the parking lot or garage to facilitate the parking of patrons' cars. A service bartender's directly supporting work includes slicing and pitting fruit for drinks, cleaning bar glasses, arranging bottles, and fetching liquor or supplies. A hotel housekeeper's directly supporting work includes stocking the housekeeping cart. A hotel bellhop's directly supporting work includes rearranging the luggage storage area and maintaining clean lobbies and entrance areas of the hotel.

**(4) Substantial amount of time.** An employer can take a tip credit for the time a tipped employee spends performing work that is not tip-producing, but directly supports tip-producing work, provided that the employee does not perform that work for a substantial amount of time. For the purposes of this section, an employee has performed work for a substantial amount of time if:

**(i)** The directly supporting work exceeds a 20 percent workweek tolerance, which is calculated by determining 20 percent of the hours in the workweek for which the employer has taken a tip credit. The employer cannot take a tip credit for any time spent on directly supporting work that exceeds the 20 percent tolerance. Time for which an employer does not take a tip credit is excluded in calculating the 20 percent tolerance; or

**(ii)** For any continuous period of time, the directly supporting work exceeds 30 minutes. If a tipped employee performs directly supporting work for a continuous period of time that exceeds 30 minutes, the employer cannot take a tip credit for any time that exceeds 30 minutes. Time in excess of the 30 minutes, for which an employer may not take a tip credit, is excluded in calculating the 20 percent tolerance in paragraph (f)(4)(i) of this section.

**(5) Work that is not part of the tipped occupation.**

**(i)** Work that is not part of the tipped occupation is any work that does not provide service to customers for which tipped employees receive tips, and does not directly support tip-producing work. If a tipped employee is required to perform work that is not part of the employee's tipped occupation, the employer may not take a tip credit for that time.

**(ii)** Examples: The following examples illustrate work that is not part of the tipped occupation because the work does not provide service to customers for

which tipped employees receive tips, and does not directly support tip-producing work. This list is illustrative and is not exhaustive. Preparing food, including salads, and cleaning the kitchen or bathrooms, is not part of the tipped occupation of a server. Cleaning the dining room or bathroom is not part of the tipped occupation of a bartender. Ordering supplies for the salon is not part of the tipped occupation of a nail technician. Servicing vehicles is not part of the tipped occupation of a parking attendant. Cleaning the dining room and bathrooms is not part of the tipped occupation of a service bartender. Cleaning non-residential parts of a hotel, such as the exercise room, restaurant, and meeting rooms, is not part of the tipped occupation of a hotel housekeeper. Cleaning the kitchen or bathrooms is not part of the tipped occupation of a busser. Retrieving room service trays from guest rooms is not part of the tipped occupation of a hotel bellhop.